## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

CONTRAVEST INC., CONTRAVEST )
CONSTRUCTION COMPANY, and )
PLANTATION POINT HORIZONTAL )
PROPERTY REGIME OWNERS )
ASSOCIATION, INC., *as assignee*, )
                             )
          Plaintiffs, )
                             )      No. 9:15-cv-00304-DCN
          vs. )
                             )      **ORDER**
                             )
MT. HAWLEY INSURANCE COMPANY, )
                             )
          Defendant. )
_____ )

    The following matter is before the court on defendant Mt. Hawley Insurance

Company's ("defendant") objections, ECF No. 140, to the Report and Recommendation

of Magistrate Judge Mary Gordon Baker (the "R&R"), ECF No. 137, recommending the

court grant plaintiffs ContraVest, Inc., ConraVest Construction Company, and Plantation

Point Horizontal Property Regime Owners Association, Inc.'s (collectively, "plaintiffs")

motions to compel.  ECF Nos. 103, 105, 106, and 113.[1]  For the reasons set forth below,

the court adopts the R&R and grants plaintiffs' motions to compel.

## I.  BACKGROUND

    Plaintiffs' bring claims for declaratory judgment, bad faith, breach of contract,

and unjust enrichment based on defendant's refusal to provide benefits allegedly owed

under certain polices of excess commercial liability insurance (the "excess policies").

---

[1] The R&R also recommended the court grant defendant's motion to reconvene.
ECF No. 117.  Defendant does not challenge this portion of the R&R.  Having reviewed
the R&R for clear error and finding none, the court adopts the R&R's analysis of the
motion to reconvene.

Compl. ¶¶ 5, 24–48. Plaintiff ContraVest Construction Company ("Contravest") constructed a development known as Plantation Point in Beaufort County, South Carolina. Id. ¶ 1. Defendant provided Contravest with excess commercial liability insurance from July 21, 2003 until July 21, 2007. Id. ¶ 5. In September 2011, plaintiff Plantation Point Horizontal Property Regime Owners Association, Inc. (the "Owners Association") filed suit against Contravest alleging that the Plantation Point property was defectively constructed (the "underlying action"). Id. ¶¶ 10, 11. After repeated demands from Contravest, defendant refused to defend, indemnify, or otherwise participate in the underlying action. Id. ¶ 15. Contravest ultimately settled the underlying action and assigned the Owners Association all rights and claims it had against defendant for improperly refusing to participate in that action. Id. ¶ 18. On December 22, 2014, plaintiffs filed the instant action in the Court of Common Pleas for Beaufort County. ECF No. 1. The action was removed to this court on January 22, 2015. Id.

On May 19, 2015, plaintiffs served their first set of requests for production, seeking the file on Contravest's claim for excess coverage in connection with the underlying action (the "Plaintation Point claim"). ECF No. 117 at 1. Defendant produced the Planation Point claim file with a corresponding privilege log on July 6, 2015, and later supplemented its production with the file's electronic claim notes and a supplemental privilege log on January 13, 2016. Id. On February 29, 2016, plaintiffs served their second set of requests for production, this time seeking defendant's files on all of Contravest's claims under the excess policies. Id. at 1–2. These files contain information regarding excess coverage claims involving other Contravest construction projects that required defendant to evaluate its exposure as Contravest's excess insurer.

Defendant produced these files on a rolling basis, providing responsive material and corresponding privilege logs on May 26, 2016, June 7, 2016, June 14, 2016, and July 7, 2016. Id at 2–4.

Plaintiffs filed four separate motions in connection with this discovery. On June 24, 2016, plaintiffs filed a motion to compel material withheld in the May 26, 2016 document production. ECF No. 103. On June 29, 2016, plaintiffs filed a motion to compel materials withheld from the January 13, 2016, June 7, 2016, and June 14, 2016 document productions. ECF No. 105. On July 1, 2016, plaintiffs filed another motion to compel defendants to comply with their February 29, 2016 requests for production. ECF No. 106. Defendant filed a consolidated response to these motions on July 18, 2016. ECF No. 110. Plaintiffs filed yet another motion to compel, seeking additional documents related to the July 7, 2016 production. ECF No. 113. Defendant filed a response to the July 7, 2016 motion to compel on August 15, 2016. ECF No. 117. Plaintiffs filed a reply on August 25, 2016. ECF No. 120. The magistrate judge held a hearing on September 19, 2016, and issued the R&R on December 12, 2016. ECF No. 137. Defendant filed objections to the R&R on January 9, 2017, ECF No. 140, and plaintiffs filed a reply on January 20, 2017. ECF No. 141. The matter is now ripe for the court's review.

## II.  STANDARD

### A.     Federal Rule of Civil Procedure 26

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this

3

scope of discovery need not be admissible in evidence to be discoverable." Id. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)).

### B.    Federal Rule of Civil Procedure 72

Pursuant to Federal Rule of Civil Procedure 72(a), when a party objects to the decision of magistrate judge on a nondispositive matter, the court must determine whether the magistrate judge's decision was "clearly erroneous or [] contrary to law." "A court's 'finding is clearly erroneous when . . . the reviewing court[, after reviewing all of the evidence] . . . is left with the definite and firm conviction that a mistake has been committed." Wilson v. Jacobs, No. 0:14-cv-4006, 2016 WL 690869, at *1 (D.S.C. Feb. 22, 2016) (alteration added) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). "[T]he phrase 'contrary to law' indicates plenary review as to matters of law." Haines v. Liggett Group Inc., 975 F.2d 81, 91 (3d Cir. 1992).

### III.  DISCUSSION

The R&R organized its analysis according to three broad issues: (1) whether communications in the defendant's claim files are protected by the attorney-client privilege or work-product doctrine, (2) the discoverability of information regarding defendant's reinsurance and reserves, and (3) whether plaintiffs waived any objection to

the privilege logs produced in connection with the July 6, 2015 document production.[2]

Defendant similarly organizes its objections by issue, arguing that: (1) the R&R's attorney-client privilege analysis erred by relying on <u>City of Myrtle Beach v. United Nat. Ins. Co.</u>, No. 4:08-cv-1183, 2010 WL 3420044, at *5 (D.S.C. Aug. 27, 2010), ECF No. 140 at 6–11; (2) even if it were proper to apply <u>City of Myrtle Beach</u>, the R&R erred in finding that plaintiffs made a prima facie showing of bad faith, <u>id.</u> at 11–20; (3) the R&R erred in finding that reinsurance information is relevant, <u>id.</u> at 20–21; (4) the R&R erred in finding that reserve information is relevant and not subject to the work-product doctrine, <u>id.</u> at 21–24; (5) the R&R erred in finding that other information in the claim files was not protected by the work-product doctrine, <u>id.</u> at 24–25; and (6) the R&R erred in finding that the plaintiffs did not waive their objections to the July 6, 2015 privilege log, <u>id.</u> at 25–27. The court addresses each objection in turn.

### A.    At-Issue Waiver in the Bad Faith Context

Defendant has claimed that numerous communications in its claim files are protected by the attorney-client privilege. Defendant challenges the magistrate judge's evaluation of its privilege claim, arguing that the magistrate judge erred by applying <u>City of Myrtle Beach</u>, 2010 WL 3420044, at *5. <u>Id.</u> at 6–11.

Under South Carolina law, "[t]he attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." <u>State v. Owens</u>,

---

[2] At one point the R&R mistakenly references the July 13, 2016 document production. While defendant spends about a paragraph arguing that the R&R's analysis erred by "misapprehending" the defendant's argument on this issue, it is clear that the magistrate judge understood the issue and the reference to the July 13, 2016 document production was simply a scrivener's error. R&R at 20–21 (discussing the timeliness of plaintiffs' objections to the July 6, 2015 privilege log).

424 S.E.2d 473, 476 (S.C. 1992).  The privilege consists of the following essential

elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Tobaccoville USA, Inc. v. McMaster, 692 S.E.2d 526, 529–30 (S.C. 2010) (quoting State

v. Doster, 284 S.E.2d 218, 219–20 (S.C. 1981)).  South Carolina also recognizes that an

insured is entitled to recover damages caused by an insurer's breach of the covenant of

good faith and fair dealing when the insured shows:

> (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) a refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of the implied covenant of good faith and fair dealing arising under the contract; (4) causing damage to the insured.

Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC, No. 2:13-cv-03035-DCN, 2016

WL 3219538, at *5 (D.S.C. June 8, 2016).

When an attorney was involved in the insurer's decision to deny coverage, much

of the information relevant to a plaintiff's bad faith claim may fall under the scope of the

privilege.  The fact that the attorney-client privilege covers relevant information is, in and

of itself, no reason to abrogate the privilege.  The entire purpose of the privilege is to

preclude discovery of otherwise relevant information in an effort to promote "a

relationship between the attorney and the client whereby utmost confidence in the

continuing secrecy of all confidential disclosures made by the client within the

relationship is maintained."  Doster, 284 S.E.2d at 219.  However, not every

communication that falls within the ordinary scope of the privilege is entitled to

protection.  Id. at 220.  "The public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice."  Id.  These policy concerns have led some courts to restrict the availability of the privilege in bad faith cases.  In fact, some states have determined that the privilege is simply inapplicable in bad faith cases.  E.g. Boone v. Vanliner Ins. Co., 744 N.E.2d 154, 158 (Ohio 2001) ("[I]n an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage.").

The City of Myrtle Beach court determined that South Carolina law favors a different approach.  As the magistrate judge explained:

> [T]he City of Myrtle Beach decision . . . addressed the application of the attorney-client privilege in bad faith actions.  The court first emphasized South Carolina's requirement that the proponent of the privilege establish the absence of waiver.  []  Drawing support from the "widely accepted approach" in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975), the court held that "if a defendant voluntarily injects an issue in the case, whether legal or factual, the insurer [voluntarily] waives, explicitly or impliedly, the attorney-client privilege."  Id.  Applying this test to the plaintiff's motion to compel, the court found that the defendant insurer injected a number of issues into the case through its answer and affirmative defenses, but had not shown that these issues did not waive the privilege.  Id. at *7.  The court specifically noted that even though the defendant did not contend that it reasonably relied on the advice of counsel, defendant still bore the burden of disproving waiver.  Id.

> In reaching its conclusion, the City of Myrtle Beach court made one other significant finding: "that the City has presented a prima facie case of bad faith."  City of Myrtle Beach, 2010 WL 3420044, at *7.  To understand the function of the prima facie requirement, one must first understand the predicament a defendant insurer faces in a bad faith action.  Because any defendant insurer who opposes a bad faith claim is almost forced to assert its own good faith, the City of Myrtle Beach approach makes it rather difficult for a defendant to avoid waiver.  The City of Myrtle Beach court even recognized that its "ruling amount[ed] to a virtual per se waiver of the privilege."  The prima facie showing requirement serves to constrain this effect and prevent automatic waiver whenever a plaintiff brings a bad

7

faith claim. Though the City of Myrtle Beach court did not explain the significance of this finding in detail, the Hearn decision on which it relied supports this understanding of the doctrine. Recognizing the damage the proposed exception could do to the attorney-client privilege, the Hearn court held that "[a] substantial showing of merit to plaintiff's case must be made before a court should apply the exception to the attorney-client privilege defined herein." Hearn, 68 F.R.D. at 582.

R&R at 14–15. The R&R went on to apply City of Myrtle Beach and found that the documents at issue in this case were not protected by the privilege. Id. at 15–19.

Defendant argues that the City of Myrtle Beach decision has been displaced by South Carolina Supreme Court Justice Costa Pleicones's concurrence in Davis v. Parkview Apartments, which criticized Hearn—the case that announced the basic approach adopted in City of Myrtle Beach—as inconsistent with the well-established rule that waiver of the attorney-client privilege must be "unequivocal" and "implied waiver should be treated with caution." 762 S.E.2d 535, 549 (S.C. 2014), reh'g denied (S.C. Sept. 11, 2014). The R&R rejected defendant's reliance on the Davis concurrence on the grounds that (1) it was not a controlling decision and (2) other courts in this district have applied City of Myrtle Beach without hesitation. R&R at 18–19.

These are both good reasons to reject the Davis concurrence. A federal court sitting in diversity jurisdiction must apply the law of the state's highest court—here, the Supreme Court of South Carolina. Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002). Where the state's highest court has not spoken on an issue, the court must predict how the court would rule.[3] Id. In making this prediction, the court may consider

---

[3] Defendant argues that the Davis concurrence constitutes the Supreme Court of South Carolina "[speaking] on the issue," ECF No. 140 at 9, but this is laughable. Five justices sit on the Supreme Court of South Carolina, not one. "The court" does not speak

> all available legal sources, including restatements of the law, treatises, law review commentaries, decisions from other jurisdictions whose doctrinal approach is substantially the same, and the majority rule. The court may also consider well considered <u>dicta</u>, and recent pronouncements of general rules or policies by the state's highest court.

<u>Wellin v. Wellin</u>, 135 F. Supp. 3d 502, 512 (D.S.C. 2015) (internal quotations omitted).

The <u>Davis</u> concurrence certainly provides some evidence that the Supreme Court of South Carolina might reject the <u>City of Myrtle Beach</u> approach, but the court finds that the numerous decisions that have applied <u>City of Myrtle Beach</u> in this district provide stronger evidence that the Supreme Court of South Carolina would adopt such an approach. At least four separate judges in this district have applied, or at least recognized, the <u>City of Myrtle Beach</u> decision. <u>See, e.g.</u>, <u>Graham v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, No. 0:16-cv-01153, 2017 WL 116798, at *4 (D.S.C. Jan. 12, 2017) (relying on <u>City of Myrtle Beach</u> to hold that defendant "waived the attorney-client privilege by asserting that it 'did not act unreasonably or in bad-faith'"); <u>State Farm Fire & Cas. Co. v. Admiral Ins. Co.</u>, No. 4:15-cv-2745, 2016 WL 4051271, at *4 (D.S.C. July 25, 2016) (relying on <u>City of Myrtle Beach</u> to hold that the plaintiff's assertion of its own good faith "waives privilege and work product protections"); <u>Hege v. Aegon USA, LLC</u>, No. 1:10-cv-1635, 2011 WL 1791883, at *5 (D.S.C. May 10, 2011) (relying on <u>City of</u>

---

any time one justice writes on an issue. The fact remains that, to date, Justice Pleicones is the only member of the court to have endorsed the views outlined in the <u>Davis</u> concurrence. Notably, Justice Peicones is no longer on the Supreme Court of South Carolina. The court has no way of knowing whether any of the current justices, much less a majority, share Justice Pleicones's views. This is not to say that the <u>Davis</u> concurrence is of no value; it falls squarely within the category of "well considered <u>dicta</u>," which can be considered by the court. <u>Wellin</u>, 135 F. Supp. 3d at 512. But it is plainly not controlling.

Defendant also suggests that the <u>Davis</u> concurrence constitutes "recent pronouncement of general rules or policies by the state's highest court." ECF No. 140 (quoting <u>Wellin v. Wellin</u>, 2:13-cv-1831-DCN, 2016 WL 5539523, at *6 (D.S.C. Sept. 30, 2016)). This argument fails for the same reasons.

Myrtle Beach to find that affirmative defenses of good faith and reasonableness waived the privilege); see also First S. Bank v. Fifth Third Bank, N.A., No. 7:10-cv-2097, 2013 WL 1840089, at *12 (D.S.C. May 1, 2013) (citing City of Myrtle Beach and recognizing there are some cases, "such as . . . bad faith insurance cases . . . where advice of counsel is squarely at issue . . . or where the subject matter is so entwined with counsel's advice simply based on the nature of the case itself"). Each of these judges is well-acquainted with South Carolina law. Thus, the fact that they each followed the City of Myrtle Beach approach is evidence that it is consistent with South Carolina law. The sheer number of decisions that have endorsed the City of Myrtle Beach approach outweighs the Davis concurrence.

There are other reasons to favor the City of Myrtle Beach decision over the Davis concurrence. Both recognize the important policy goals of the attorney-client privilege, City of Myrtle Beach, 2010 WL 3420044, at *4; Davis, 762 S.E.2d at 549, but the City of Myrtle Beach court felt it was necessary to balance these policy goals against the substantive interests underlying an insured bad faith claim. City of Myrtle Beach, 2010 WL 3420044, at *4. The Davis concurrence took the position that "the well-settled contours of the attorney-client privilege already balance [such] competing public interests." Davis, 762 S.E.2d at 550. This is by no means an unreasonable position, but the court sides with the City of Myrtle Beach court on this issue. While the ordinary contours of the attorney-client privilege do account for competing public interests, most claims are not threatened by the attorney-client privilege in the same way as bad faith claims, which turn heavily on what the insurer knew at the time it denied coverage.

While it is true that the <u>Hearn</u> test[4] does damage to the attorney-client privilege, it is equally true that the attorney-client privilege is uniquely damaging to plaintiffs' ability to recover in bad faith cases. The court thinks some balancing is appropriate.

Because the <u>City of Myrtle Beach</u> approach is based on a balancing of the competing policies at issue, and because that approach has been widely adopted by the courts in this district, the court finds no error in the magistrate judge's reliance on that decision.[5]

### B.     Prima Facie Test

Defendant also argues that, even if the court follows the <u>City of Myrtle Beach</u> decision, the R&R erred in finding that plaintiffs presented a prima facie case sufficient to warrant the application of the at-issue waiver in this case. ECF No. 140 at 11–20. The R&R found that plaintiffs presented evidence that once defendant realized that the underlying policies were nearing exhaustion, it essentially changed its coverage position in an effort to avoid coverage. R&R at 15–16. The coverage dispute at the heart of this case is whether "vertical" or "horizontal" exhaustion applies when determining whether excess coverage is available in the progressive injury context, where an occurrence is

---

[4] As the magistrate judge recognized, it is notable that the <u>Davis</u> concurrence addressed its criticism at the <u>Hearn</u> test, not the <u>City of Myrtle Beach</u> decision, and did not appear to acknowledge anything analogous to the prima facie showing requirement imposed by the <u>City of Myrtle Beach</u> court.

[5] Defendant also argues that because New York law is generally consistent with South Carolina privilege law, and New York courts reject the <u>Hearn</u> test, the court should reject the application of <u>City of Myrtle Beach</u> here. This argument is easily disposed of, largely because the New York courts' position on the issue was already discussed in the <u>Davis</u> concurrence. <u>Davis</u>, 762 S.E.2d 535, 550 (citing <u>In re County of Erie</u>, 546 F.3d 222, 227–29 (2d Cir. 2008)). Even if this argument were considered independently, the court finds it unpersuasive. While this may be an appropriate basis for predicting South Carolina law in some cases, the court places little weight on the law applied in a "substantially similar" jurisdiction when the court has multiple decisions—albeit, no controlling decisions—addressing the issue under South Carolina law.

spread across multiple policy periods. For context, it is notable that South Carolina has adopted a "time on the risk" approach for allocating liability between successive insurers in progressive damages cases, meaning that "each triggered insurer is responsible for a share of the total loss that is proportionate to its time on the risk." Crossmann Communities of N. Carolina, Inc. v. Harleysville Mut. Ins. Co., 717 S.E.2d 589, 602 (S.C. 2011). Plaintiffs argue that exhaustion should be determined "vertically," meaning that an excess policy is triggered when the underlying policies in effect during the excess insurer's pro-rata time on the risk are exhausted. ECF No. 141 at 6. Defendant, on the other hand, contends that it is entitled to require what is known as "horizontal" exhaustion, i.e. exhaustion of all primary coverage policies that were triggered by the same progressive damages period,[6] even if those policies were not in effect during defendant's time on the risk.[7] ECF No. 140 at 12–14. In its objections, defendant argues that it has always held this position, and thus, the magistrate judge's prima facie analysis was factually unfounded. Id. at 15–18. Defendant also argues that, even if it did change its position, plaintiffs have failed to make a prima facie showing because this change of position was not unreasonable. Id. at 14–16, 18–20.

Before addressing defendant's arguments, the court notes that it is debatable whether the prima facie showing is even required under City of Myrtle Beach. Though

_____

[6] This covers "all policies in effect from the time of injury-in-fact during the progressive damage." Joe Harden Builders, Inc. v. Aetna Cas. & Sur. Co., 486 S.E.2d 89, 91 (S.C. 1997).

[7] In addition to the case law defendant offers to show that horizontal exhaustion is allowed under South Carolina law, defendant highlights the "Other Insurance" provision of its excess policies to show that the horizontal exhaustion approach is required by the excess policies. The Other Insurance provision states: "If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy . . . the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance." ECF No. 140 at 13.

the City of Myrtle Beach decision dedicated a fair amount of discussion to the prima

facie showing analysis, it never fully explained the significance of this discussion.  See

City of Myrtle Beach, 2010 WL 3420044, at *5–7 (discussing prima facie showing of bad

faith).  Based on this discussion, along with certain language in Hearn requiring that "[a]

substantial showing of merit to [the] plaintiff's case  must be made before a court should

apply the exception to the attorney-client privilege defined herein," Hearn, 68 F.R.D. at

582, the magistrate judge determined that for the City of Myrtle Beach court's version of

the at-issue waiver to apply, the plaintiff must first present a prima facie showing of bad

faith.  R&R at 15.  Given defendant's fervent opposition to the R&R, it is interesting to

note that the magistrate judge actually applied a far more insurer-friendly interpretation

of the City of Myrtle Beach decision than any of the other courts that have addressed the

issue in this district.  As noted above, at least four district judges have applied—or in one

case, recognized—the City of Myrtle Beach court's formulation of the at-issue waiver.

See, e.g., Graham, 2017 WL 116798, at *4 (relying on City of Myrtle Beach to hold that

defendant "waived the attorney-client privilege by asserting that it 'did not act

unreasonably or in bad-faith'"); State Farm, 2016 WL 4051271, at *4  (relying on City of

Myrtle Beach to hold that the plaintiff's assertion of its own good faith "waives privilege

and work product protections"); Hege, 2011 WL 1791883, at *5 (relying on City of

Myrtle Beach to find that affirmative defenses of good faith and reasonableness waived

the privilege); see also First South Bank, 2013 WL 1840089, at *12 (citing City of Myrtle

Beach and recognizing there are some cases, "such as . . . bad faith insurance cases . . .

where advice of counsel is squarely at issue . . . or where the subject matter is so

entwined with counsel's advice simply based on the nature of the case itself").  None of

13

these cases appear to require anything resembling the prima facie showing requirement applied by the magistrate judge.  Thus, a strong argument could be made that no such requirement exists.

Nevertheless, this court finds that the force of the magistrate judge's reasoning cannot be ignored.  The City of Myrtle Beach decision rejected the per se wavier approach.  City of Myrtle Beach, 2010 WL 3420044, at *5.  Even the district court decisions that have omitted the prima facie showing requirement appear to recognize that South Carolina does not provide for a per se waiver rule.  Graham, 2017 WL 116798, at *4 ("Under South Carolina law, there is no per se waiver where there are allegations of bad faith.").  However, if City of Myrtle Beach is applied without a prima facie showing requirement, the defendant-insurer waives the attorney-client privilege the moment it contests the plaintiff's allegations of bad faith.  For most cases, this has the same effect as a per se waiver.[8]  As the magistrate judge explained, "[t]he prima facie showing requirement serves to constrain this effect and prevent automatic waiver whenever a plaintiff brings a bad faith claim."  R&R at 15.  If the City of Myrtle Beach court's rejection of the per se waiver rule has any meaning, that decision must be read to require a prima facie showing of bad faith before the at-issue waiver can be applied.

The question then becomes:  what does a showing of bad faith require?  The magistrate judge implicitly took the position that the plaintiff must only establish a prima facie showing of the bad faith element of its claim, as opposed to a prima facie showing of every element of the bad faith claim.  Thus, the R&R was able to find that City of

---

[8] To be sure, a defendant could concede bad faith and contest the claim under another element of the claim, but the court does not believe this consideration is strong enough to disturb its conclusion that, absent a prima facie showing requirement, the City of Myrtle Beach approach effectively turns into a per se waiver.

Myrtle Beach applied without addressing the coverage question underlying this entire dispute. Defendant appears to take the opposite position, arguing that the magistrate judge erred in finding that plaintiffs had made a prima facie showing of bad faith without first determining whether Contravest was actually entitled to coverage under the excess policies. ECF No. 140 at 15.

This is a fair point. The City of Myrtle Beach decision referred to a "prima facie case of bad faith." City of Myrtle Beach, 2010 WL 3420044, at *5 (emphasis added). Similarly, the Hearn case required a plaintiff to show that its "case" was meritorious, not simply the allegations of the defendant's intent. Hearn, 68 F.R.D. at 582 (emphasis added). These references to "the case" could be read to indicate that the court must evaluate every element of the plaintiff's bad faith claim before finding that the defendant waived the privilege by contesting the allegations of bad faith.

On the other hand, there is reason to think that the magistrate judge was correct to focus on the bad faith element of the claim. For one, the City of Myrtle Beach court's prima facie analysis did not address every element of the plaintiff's bad faith claim. The City of Myrtle Beach court, like the magistrate judge, focused exclusively on the bad faith element. See City of Myrtle Beach, 2010 WL 3420044, at *5–7 (outlining the plaintiff's evidence of bad faith and concluding that "[f]or the purposes of the motion to compel, the court finds that the City has presented a prima facie case of bad faith"). Defendant's understanding of the prima facie requirement also produces a strange result in cases such as this one, where the parties dispute the nature of their contractual obligations. Because a bad faith claim requires the plaintiff to prove "a refusal by the insurer to pay benefits due under the contract," Richard Ruth's Bar & Grill, 2016 WL

15

3219538, at *5, and questions of contractual interpretation are generally resolved as a matter of law,[9] <u>Thalia S. ex rel. Gromacki v. Progressive Select Ins. Co.</u>, 736 S.E.2d 863, 865 (S.C. Ct. App. 2012) ("The construction and enforcement of an unambiguous contract is a question of law for the court, and thus can be properly disposed of at summary judgment." (quoting <u>Hansen ex rel. Hansen v. United Servs. Auto. Ass'n</u>, 565 S.E.2d 114, 116 (S.C. Ct. App. 2002))), defendant's reading of the prima facie requirement would effectively convert a discovery dispute into a motion for summary judgment on the coverage issue. This seems an odd way to apply the prima facie concept, which is generally centered on an evaluation of evidence. As one commenter has explained:

> "Prima facie" simply means that evidence of a fact has been produced which may ultimately be rebutted. <u>See</u> <u>Mack v. Branch No. 12, Post Exchange, Fort Jackson</u>, 35 S.E.2d 838 (S.C. 1945) ("prima facie" is a Latin phrase and literally means "at first view; on the first appearance"; prima facie evidence may produce a result for the time being, but that result may be repelled). The term "prima facie case" is employed to signify that sufficient <u>evidence</u> has been introduced to warrant submission to the jury of the issue to which the <u>evidence</u> is directed.

§ 9:2. Prima facie case, Trial Handbook for South Carolina Lawyers § 9:2 (emphasis added). Thus, there is a strong argument that <u>City of Myrtle Beach</u>'s prima facie showing requirement only applies to the <u>element</u> of bad faith, not the entire cause of action.

---

[9] Even when a policy is ambiguous—a situation when the interpretation of an ordinary contract would go to the jury—South Carolina law requires the court to construe the ambiguity in favor of the insured. <u>Canopius US Ins., Inc. v. Middleton</u>, 202 F. Supp. 3d 540, 543 (D.S.C. 2016) ("[A]n insurance contract which is in any respect ambiguous or capable of two meanings must be construed in favor of the insured." (quoting <u>Beaufort Cty. Sch. Dist. v. United Nat. Ins. Co.</u>, 709 S.E.2d 85, 90 (S.C. Ct. App. 2011))).

Ultimately, however, the court need not decide this issue as defendant waived the argument by failing to raise it before the magistrate judge. "A magistrate's decision should not be disturbed on the basis of arguments not presented to him." <u>Keitt v. Ormond</u>, 2008 WL 4964770, at *1 (S.D.W. Va. Nov. 13, 2008) (quoting <u>Jesselson v. Outlet Associates of Williamsburg, Ltd. P'ship</u>, 784 F. Supp. 1223, 1228 (E.D. Va. 1991)). "[T]he purpose of the Magistrates Act is to allow magistrates to assume some of the burden imposed on the district courts and to relieve courts of unnecessary work." <u>Id.</u> at *2 (quoting <u>Jesselson</u>, 784 F. Supp. at 1228–29). "Allowing parties . . . to raise new issues or arguments at any point in the life of a case would" frustrate this purpose and "result in a needless complication of litigation." <u>Id.</u> Instead, "[p]arties should fully plead their claims, and fully advance their arguments, at all stages of litigation, unless they are prepared to waive them." <u>Id.</u> Thus, "[t]he [c]ourt is not obligated to consider new arguments raised by a party for the first time in objections to the [m]agistrate's [r]eport." <u>Dune v. G4s Regulated Sec. Sols., Inc.</u>, No. 0:13-cv-01676, 2015 WL 799523, at *2 (D.S.C. Feb. 25, 2015). While the court has the power to address such arguments, that power lies within the court's sound discretion. <u>Id.</u>

The court has reviewed defendant's briefs and the transcript of the parties' hearing before the magistrate judge, and has been unable to find any argument suggesting that the court must decide whether vertical or horizontal exhaustion applies as part of its prima facie showing analysis. When defendant was not contesting the legitimacy of the <u>City of Myrtle Beach</u> decision, it spent a fair amount of time arguing that the <u>evidence</u> did not show that it changed its coverage position. ECF No. 110 at 9; ECF No. 117 at 6. Defendant also emphasized <u>evidence</u> in the record indicating that other insurers, and even

17

Contravest's counsel, recognized that horizontal exhaustion applies. ECF No. 110 at 9–10; ECF No. 117 at 7–8. At most, the defendant made a factual argument that its coverage position was not "unreasonable," and therefore, plaintiffs could not establish bad faith. ECF No. 142, Hr'g Tr. at 39:4–20 (arguing that defendant's position is not "clearly erroneous"). Therefore, the court finds that defendant waived any argument that the court must first resolve the underlying coverage dispute before finding a prima facie showing of bad faith.[10]

Though the court has discretion to address arguments not presented to the magistrate judge, the court does not think it is appropriate to do so here. This area of the law is rather complex, and appears to be unsettled in South Carolina. The court thinks it best to proceed with the utmost caution as it confronts issues that do not appear to have been addressed by any court under South Carolina law. This is especially so when the entire controversy hinges on the issues at stake. The parties did provide some outline of their respective coverage positions in their briefing, but the court is disinclined to embark on an analysis that will either resolve or significantly alter the case without a full round of briefing when the stakes are clear. Nor is the court inclined to allow defendant to escape the consequences of failing to squarely present its arguments to the magistrate judge. This would only encourage the waste of judicial resources. Nelson v. Town of Mt. Pleasant Police Dep't, No. 2:14-cv-4247-DCN, 2016 WL 5110171, at *3 (D.S.C. Sept. 21, 2016). Therefore, the court does not decide whether a plaintiff must present a prima

---

[10] For the same reasons, the court finds that defendant waived any argument that the court must review the legal merits of defendant's coverage position to determine whether it was objectively unreasonable. As outlined above, the parties presented factual arguments on the prima facie issue. These are the arguments the court will review on objection.

18

facie showing of the bad faith element of its claim, or a prima facie showing on every element of a bad faith claim. Instead, the court will focus on the factual arguments that were properly presented to the magistrate judge.

The court finds no clear error in the magistrate judge's finding that plaintiff presented a prima facie showing of bad faith. Defendant's argument on this matter was largely based on its own evidence, not the evidence cited by plaintiffs in support of their prima facie showing. See ECF No. 110 at 9–10 (highlighting evidence that plaintiffs' counsel in the underlying case recognized that other insurers had adopted a horizontal exhaustion position and that this position had been accepted in a majority of jurisdictions); ECF No. 113 at 7–8 (same). As the magistrate court recognized, defendant's evidence is immaterial to the prima facie showing analysis. The fact that a plaintiff's evidence may be rebutted does not mean that it is insufficient to support a prima facie showing. Indeed, the very concept of a prima facie showing recognizes that the evidence may be rebutted by conflicting evidence. Mack, 35 S.E.2d at 844. Thus, to the extent defendant's argument was based on its own evidence, the argument misses the point and can be set aside without further inquiry.[11]

---

[11] Notably, the email which defendant places so much reliance on does not explicitly contradict plaintiffs' claim that "Mt. Hawley . . . was the only insurance carrier to suggest that insurance covering previous and future years are somehow responsible for an occurrence in the years of Mt. Hawley's coverage." ECF No. 133 at 4. In the email, plaintiffs' counsel states that one of the other excess insurers is "arguing that all primary [coverage] must be exhausted," but it is unclear whether this means all primary coverage for the same policy year as the excess coverage—i.e., vertical exhaustion—or all primary coverage for any coverage year, whether or not it overlapped with the excess policy in question—i.e., horizontal exhaustion. ECF No. 110-1. Moreover, plaintiffs' counsel could have resolved this confusion in her response to the following prompt: "Are the excess carriers saying none of them kick in until all general liability coverage for every year is exhausted? I think there is some case law out there but not in SC." Id. Instead, plaintiffs' counsel gave an account of her research findings in response to the statement

Defendant did include some arguments that properly sought to undermine the evidence cited to support the plaintiffs' prima facie showing. ECF No. 117 at 6. One of plaintiffs' primary arguments was based on an August 13, 2013 email sent to defendant by coverage counsel in connection with a different Contravest claim (the "Courtney Landing claim"), which stated that defendant would likely be "on the front line for any upcoming Contravest claims since it looks like Zurich and [Axis] are exhausted." Plaintiffs argued, and the magistrate judge agreed, that this email could be read to indicate that defendant took a vertical exhaustion position in prior cases, where there was little risk that defendant's excess policies would be impaired. ECF No. 113 at 2. The court finds no error in the magistrate judge's finding. Defendant contends that the mention of "Zurich" actually implicates horizontal coverage position because "Zurich" is not listed as a scheduled underlying insurer in the excess policies at issue here. Perhaps this is true, but it is not clear from the face of the email because the email does not clarify (1) what policy years were implicated by the Courtney Landing claim, or (2) what policy years were covered by the referenced Zurich policies. Thus, it is not clear whether the referenced Zurich policies overlapped with defendant's time on the risk in the Courtney Landing claim.

Plaintiffs also highlighted a number of reservation of rights letters that defendant sent Contravest in connection with prior claims. These letters each stated that defendant's excess policies would provide coverage after the scheduled underlying coverage was exhausted. See, e.g., ECF No. 105-9 ("The Limits of Liability on each policy are shown to be $10 million each occurrence, excess of $1 million each occurrence

_____

about case law, without actually answering whether other excess carriers had taken the horizontal exhaustion position defendant advocates here. Id. (emphasis added).

under underlying insurance provided by [the Axis policies]."). It is true that these letters did not explicitly commit defendant to a vertical exhaustion position, but the comparison between these letters and the reservation of rights letter in sent response to the Plantation Point claim is significant. In contrast to the letters sent in previous claims, when Contravest made the Planation Point claim, defendant added language stating that Contravest "has substantial primary insurance in effect that is and remains unexhausted, including (but not limited to) [the Axis policies]."[12] ECF No. 105-10. The court does not think it unreasonable to interpret this new language as evidence of a change in position. The horizontal exhaustion argument would have necessarily been stronger in previous claims when all of the primary policies were less impaired. Thus, it is fair to wonder why defendant only highlighted this language <u>after</u> the scheduled underlying policy was nearing exhaustion.

Ultimately, the court recognizes that competing inferences—not to mention competing evidence—may win the day. But this does not preclude the court from finding a prima facie showing of bad faith. "The term 'prima facie case' is employed to signify that sufficient evidence has been introduced to warrant submission to the jury of the issue to which the evidence is directed." § 9:2. Prima facie case, Trial Handbook for South Carolina Lawyers § 9:2. The court sees no error in the magistrate judge's determination that plaintiffs presented such evidence here.

---

[12] Defendant appears to think that the magistrate judge cited the Plantation Point reservation of rights letter as evidence that the defendant previously adopted a vertical exhaustion position. ECF No. 140 at 17. This is incorrect. The R&R clearly cites the Planation Point reservation of rights letter to illustrate defendant's <u>current</u> coverage position. R&R at 16 (recognizing that defendant now claims "the Axis policies were not the only underlying policies that required exhaustion" and citing the Planation Point reservation of rights letter for support).

21

Therefore, the court adopts the R&R's analysis and finds that defendant has waived the attorney-client privilege with respect to the attorney-client communications contained in its claim files—at least to the extent they are relevant to the instant action. Consistent with the R&R, the court directs the defendant to submit such communications for in camera review.[13]

### C.     Reinsurance Information

Defendant next challenges the magistrate judge's finding that its communications with its reinsurers are relevant and discoverable.  ECF No. 140 at 20–21.  To the extent this is meant to be a general objection to the magistrate judge's relevance analysis, the court finds the magistrate judge's reasoning to be persuasive and adopts the magistrate judge's position as its own.  See R&R at 5–7 (explaining flaws in the rationales used to preclude discovery of reinsurance information and finding defendant's communications with its insurers relevant to explain "why defendant [allegedly] changed certain coverage positions as time passed and it became clear the excess policies would be forced to cover a substantial judgment").

Defendant also briefly objects to the magistrate judge's failure to explain the relevance of reinsurance-related communications contained in claim files that are not at issue in this case.  ECF No. 140 at 21 n.12.  These communications are relevant for the same reason the reinsurance-related communications in the Plantation Point claim file are

---

[13] Because the at-issue waiver is so related to the relevance of communications at issue, it seems appropriate to take the rather unusual step of conducting an in camera review for relevance, despite having already determined that the privilege has been waived.  In ordering such a review, the court is mindful of the need to protect the privilege against undue incursion under the City of Myrtle Beach approach.  It is also notable that some of the documents in the claim files already need to be reviewed to determine the applicability of the work-product doctrine.  R&R at 13.

relevant.  As the R&R explained, communications with reinsurers are "relevant to [an insurer's] good faith to the extent that [the insurer] explained its reasons for granting or denying portions of plaintiffs' claims or otherwise described or explained its handling of plaintiffs' claims."  R&R at 6–7 (quoting Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am., 2009 WL 1247122, at *4 (E.D. La. May 5, 2009)).  Plaintiffs seek to discover reinsurance-related communications arising out of all of the claims Contravest made under the excess policies at issue in this litigation.  Because plaintiffs allege that defendant changed its interpretation of these policies once it became apparent that it would be forced to provide coverage, it is useful to know how the defendant handled prior claims made under the same policies.  Thus, defendant's communications with its reinsurers regarding these prior claims are relevant.

Defendant's main argument is that the magistrate judge erred by recommending that defendant's communications with its reinsurers were discoverable without first conducting an in camera review.[14]  Defendant cites Doster, 284 S.E.2d at 220, for the proposition that "[t]he court must determine the question of privilege without first requiring disclosure of the substance of the communication."  This argument appears misplaced, as the magistrate judge's analysis was based on relevance, not privilege.

---

[14] Defendant expresses some confusion over whether this was actually the magistrate judge's recommendation, noting that the R&R states that "[i]f an insurer provides information clarifying the content of the disputed reinsurance information, discovery may be inappropriate, but defendant has not done so here. Absent such a showing, the court finds no reason to preclude discovery of the requested information in this case."  R&R at 7.  Read in context, the court thinks it is clear that the magistrate judge was simply finding that defendant failed to show that the information was irrelevant, not inviting defendant to provide further information. See Brey Corp. v. LQ Mgmt., L.L.C., 2012 WL 3127023, at *4 (D. Md. July 26, 2012) ("In order to limit the scope of discovery, the 'party resisting discovery bears the burden of showing why [the discovery requests] should not be granted.'" (quoting Clere v. GC Servs., L.P., 2011 WL 2181176, at *2 (S.D.W. Va. June 3, 2011)).

Though defendant has consistently argued that communications with reinsurers are "privileged," it has just as consistently supported this argument with citations to decisions that have analyzed such communications under a relevance framework.  ECF No. 140 at 20; ECF No. 117 at 8–9; ECF No. 140 at 20.  There is a difference between privileged information and irrelevant information.  While defendant may think the terms are interchangeable, that does not make it so.

To the extent defendant contends that the magistrate judge was required to conduct an <u>in camera</u> review before deciding the issue of relevance, the court disagrees. Courts regularly resolve relevance questions without resorting to an <u>in camera</u> review.  If a more thorough description of the contents of the reinsurance-related communications would have proven that such materials were irrelevant, defendant could have provided such a description.  Indeed, defendant could have requested an <u>in camera</u> review.  Having failed to take any of these steps, defendant cannot now complain that further review of the materials might change the result.  <u>Martin v. Bimbo Foods Bakeries Distribution, LLC</u>, 313 F.R.D. 1, 5 (E.D.N.C. 2016) ("The party resisting discovery bears the burden of establishing the legitimacy of its objections."); <u>Brey</u>, 2012 WL 3127023, at *4 ("In order to limit the scope of discovery, the 'party resisting discovery bears the burden of showing why [the discovery requests] should not be granted.'" (quoting <u>Clere</u>, 2011 WL 2181176, at *2).

D.     **Loss Reserves**[15]

Defendant argues that "[c]ourts across the country have held that reserve information is not discoverable for two reasons: (1) reserves are not relevant to coverage or bad faith; and (2) reserves reflect privileged work product." ECF No. 140 at 21–22. The court takes each argument in turn.

1.     **Relevance**

Apart from an impressively long string-cite, defendant provides little actual argument about whether loss reserve information is relevant, and again, the court adopts the magistrate judge's analysis as its own. A review of the case law indicates that the relevance issue is not as settled as defendant suggests, and "to the extent [reserve] information reveals defendant's assessment of the validity of Contravest's claims for excess coverage," it is relevant. R&R at 8–9.

Again, defendant's argument focuses on the magistrate judge's recommendation that the court compel defendant to produce its reserve information without first conducting an in camera review. ECF No. 140 at 23. It is not clear where defendant is getting the notion that the court must conduct an in camera to confirm whether information is relevant. The burden of proof is on the defendant to prove that the material sought is not discoverable. E.g. Martin, 313 F.R.D. at 5. If the court were required to independently confirm whether every piece of discovery material was relevant before ruling on a motion to compel, there would be little point to having a burden of proof.

---

[15] Defendant correctly points out that the R&R did not specifically address "expense reserves." ECF No. 140 at 21 n.14. Plaintiff does not contest this interpretation.

Defendant argues that it "did not provide information about the content of its reserves as this would be counterproductive to its attempt to protect the information as privileged." ECF No. 140 at 23. Regardless of defendant's attempt to preserve its work-product objection,[16] "for a relevance objection to be adequate, it must be plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable." Cappetta v. GC Servs. Ltd. P'ship, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008) (internal quotations omitted) (cited by First S. Bank v. Fifth Third Bank, N.A., No. 7:10-cv-2097-MGL, 2012 WL 12898229, at *2 (D.S.C. Oct. 2, 2012)). Defendant failed to satisfy this requirement. To the extent defendant felt an in camera review was necessary, it could have explained that position in its briefing before the magistrate judge. It did not. Therefore, the court agrees with the magistrate judge's conclusion that the information is relevant.

## 2.     Work-Product Doctrine

Defendant first argues that the magistrate judge's "analysis fails to take into consideration that inherent in the reserves themselves are the mental impressions of counsel." ECF No. 140 at 24. The court disagrees. The magistrate judge found that defendant's reserve information was not subject to work-product protection because defendant failed to show that such information was prepared in anticipation of litigation.[17] R&R at 11. This rationale has nothing to do with whether the reserves contain the mental impressions of counsel. Thus, defendant's argument fails.

---

[16] The court assumes this is the "privilege" defendant is referencing since it does not argue that any other privilege applies.

[17] The R&R recognized that "in the liability insurance context, [] any claim on a liability policy will most likely involve the prospect of litigation against the insured[,]" R&R at 11 (emphasis added), but reasoned that this does not satisfy the anticipation of

Defendant then returns to its now familiar refrain to argue that the magistrate judge erred in finding that the work-product doctrine did not apply without first conducting an in camera review. ECF No. 140 at 23–24. However, defendant bore the burden of proving that the work-product doctrine applied. Gilliard v. Great Lakes Reinsurance (U.K.) PLC, No. 2:12-cv-00867, 2013 WL 1729509, at *2 (D.S.C. Apr. 22, 2013). The magistrate judge found that defendant failed to carry this burden, and the court agrees. Defendant's belated request for an in camera review is unavailing.[18]

### E.     Timeliness of Plaintiffs' Objections to the July 6, 2015 Privilege Log

Defendant argues that plaintiffs waived their objections to the documents listed on the July 6, 2015 privilege log. ECF No. 140 at 25. It is useful to explain the facts underlying this issue. On July 6, 2015, defendant produced a number of documents in response to plaintiffs' discovery requests along with a corresponding privilege log. ECF No. 117 at 2. On January 13, 2016, defendant supplemented this privilege log to account for certain electronic claims notes in the Plantation Point claim file. Id. On January 25,

---

litigation requirement because it is the preparer—in this case, defendant—who must face the prospect of litigation. Id. The court finds this analysis sound.

[18] Ironically, in the section immediately following this request, defendant objects to the magistrate's ruling that certain other documents in defendant's claim files should be submitted for in camera review to determine the applicability of the work-product doctrine. ECF No. 140 at 24. The magistrate judge ruled that defendant failed to meet its burden to show that the work-product doctrine applied to such documents, explaining that "[b]ecause an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection." Gilliard, 2013 WL 1729509, at *2. Defendant now argues that even though the claims were handled as part of defendant's ordinary course of business, "situations arise in which counsel is consulted in anticipation of an insurer being sued. Indeed, that is the case here as Mt. Hawley was threatened with litigation and hired outside counsel to protect its interest." ECF No. 140 at 25. While defendant does not provide a great deal of support for this argument, the court is sure that if defendant is correct, it will be apparent from the in camera review. Therefore, the court sees no reason to disturb the magistrate judge's recommendation on this issue.

27

2016, plaintiffs filed a motion to compel, outlining their objections to certain of the entries in the updated privilege log.   ECF No. 59.  However, some of plaintiffs' objections related to entries that were included in the original July 6, 2015 privilege log. Id. at 3.  This motion was later withdrawn without prejudice at a March 23, 2016 hearing to allow plaintiffs to address the issues after receiving all of the privilege logs.  ECF No. 134 at 63:25–64:15.  On June 29, 2016, plaintiffs filed another motion to compel, renewing their objections to the July 6, 2015 privilege log.  ECF No. 105.  Thus, defendant argues, plaintiffs' June 29, 2016 motion to compel should be denied in part for failure to comply with Local Civil Rule 37.01, which requires all motions to compel to be filed within 21 days after receipt of the discovery response to which they are directed.

        The R&R emphasized the fact that defendant agreed to allow plaintiffs to withdraw the January 25, 2016 motion to compel—i.e., the first motion that addressed the July 6, 2015 privilege log—and allowed plaintiffs to refile that motion at a later date.  In light of this agreement, the magistrate judge "[had] little trouble finding that plaintiffs were entitled to postpone filing their objections to the privilege logs until defendant provided the complete set of privilege logs."  ECF No. 137 at 20–21.  Defendant argues that the magistrate judge "fail[ed] to appreciate that the [January 25, 2016] motion to compel [] was untimely when made."  ECF No. 140 at 26.  The court doubts this very seriously.  It is fairly clear that the magistrate judge fully understood the untimeliness argument, but felt that because defendant allowed plaintiffs to refile the motion, it would be unfair to allow defendant to oppose the refiled motion on procedural grounds. Nevertheless, defendant correctly points out that it raised its timeliness objection in its opposition to the January 25, 2016 motion to compel.  ECF No. 73 at 2.  The court has

reviewed the transcript of the March 23, 2016 hearing where the original motion was

withdrawn, and it does not appear that defendant meant to waive its timeliness objections

by consenting to the withdrawal.  ECF No. 134 at 63:25–64:15.  Therefore, the court does

not find this to be a reason for allowing the untimely motion.

      The court is more persuaded by the magistrate judge's Federal Rule of Civil

Procedure 6(b) analysis.  Rule 6 applies to "any time period specified in these rules, in

any local rule or court order."  Pursuant to Rule 6(b)(1),

> [w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

"[F]actors to be considered in determining whether excusable neglect has occurred

[include]:  '[1] danger of prejudice to the [non-movant], [2] the length of delay and its

potential impact on judicial proceedings, [3] the reason for the delay, including whether it

was within the reasonable control of the movant, and [4] whether the movant acted in

good faith.'"  Cronin v. Henderson, 209 F.R.D. 370, 371 (D. Md. 2002) (first and second

alterations added) (quoting Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship,

507 U.S. 380, 395 (1993)).

      The magistrate judge determined that because plaintiffs could not compel the

production of otherwise privileged materials until they could establish a prima facie

showing of bad faith under City of Myrtle Beach, there was a good reason for the

plaintiffs' delay in objecting to the July 6, 2015 privilege log.  R&R at 20–21.  The

magistrate judge also found that there was "no indication the delay will significantly

29

affect the proceedings and plaintiffs appear to have acted in good faith." Id. at 21. The court agrees with these findings. The magistrate judge also found that because defendant agreed to let plaintiffs refiled their motion to compel, there was no risk of prejudice to the defendant. Id. Because defendant never meant to waive its timeliness objection, the court is somewhat less convinced by this argument, but prejudice to the defendant is only one factor. In any event, defendant has failed to explain why it would be prejudiced in its objections. Thus, the court agrees that plaintiffs have shown excusable neglect.

Defendant points out that plaintiffs did not raise the excusable neglect issue. But the fact that the magistrate judge "grant[ed] [p]laintiffs relief that they never requested," ECF No. 140 at 26, is no reason to reject the magistrate judge's recommendation. Courts have the power to construe untimely filed motions as if they include a request for relief under Rule 6(b)(1). Meyers v. Baltimore Cty., Md., 2014 WL 1348007, at *2 (D. Md. Apr. 3, 2014) ("I will construe plaintiff's Motion as including a request to file an untimely Motion, and consider whether plaintiffs have demonstrated excusable neglect."); Axxiom Mfg., Inc. v. McCoy Investments, Inc., 846 F. Supp. 2d 732, 736 (S .D. Tex. 2012) ("The court will construe Axxiom's response as a motion for leave to file an untimely response, and that motion is granted."); Hall v. Marshall, 479 F. Supp. 2d 304, 311 (E.D.N.Y. 2007) ("[T]he [Court] construes the amended complaint as a motion for leave to amend."). This is all the magistrate judge did here. Thus, the magistrate judge's ruling was not in error.

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R.  The court therefore

**GRANTS** plaintiffs' motions to compel, consistent with the R&R.  The court also

**GRANTS** defendant's motion to reconvene.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2017**
**Charleston, South Carolina**

31