**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| CONTRAVEST, INC., CONTRAVEST CONSTRUCTION COMPANY, and PLANTATION POINT HORIZONTAL PROPERTY REGIME OWNERS ASSOCIATION, INC., as assignee, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 9:15-cv-00304-DCN |
| vs. | ) ) | **ORDER** |
| MT. HAWLEY INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

The following matter is before the court on defendant Mt. Hawley Insurance Company's ("Mt. Hawley") second motion for summary judgment, ECF No. 214. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

Plaintiffs bring this action based on Mt. Hawley's refusal to provide benefits allegedly owed under certain policies of excess commercial liability insurance. Plaintiff ContraVest Construction Company constructed a development known as Plantation Point in Beaufort County, South Carolina. Mt. Hawley provided ContraVest Construction Company, plaintiff ContraVest Inc. (collectively, "ContraVest"), and other policyholders with excess commercial liability insurance through four policies:

> Policy No. MXL0356978, effective July 21, 2003 to July 21, 2004 ("03–04 Policy")
> Policy No. MXL0359180, effective July 21, 2004 to July 21, 2005 ("04–05 Policy")
> Policy No. MXL0359627, effective July 21, 2005 to July 21, 2006 ("05–06 Policy")

1

Policy No. MXL0365074, effective July 21, 2006 to July 21, 2007 ("06–07 Policy")

ECF Nos. 193-2–193-5 ("the Excess Policies"). The 03–04 Policy lists a policy issued by Sheffield, which Mt. Hawley believes to now be Axis, as ContraVest's general liability policy. ECF No. 193-2 at 4. The other excess policies list a policy issued by Axis or AXIS Surplus (collectively, "Axis") as ContraVest's general liability policy. ECF Nos. 193-3 at 2; 193-4 at 2; 193-5 at 4.

ContraVest was previously named as a defendant in another construction defect case, Courtney Landing Condominium Association v. Contravest, Inc. et al ("Courtney Landing action"). ContraVest sought insurance coverage under the Excess Policies in that action as well. Mt. Hawley issued various reservation of rights letters, stating that "[t]he Mt. Hawley policies are Excess Liability Policies and are not potentially responsive unless and until exhaustion of the underlying insurance has taken place." ECF No. 105-8 at 3; 105-9 at 3; 105-10 at 8. Plaintiffs contend that these letters gave ContraVest a reasonable expectation that Mt. Hawley would indemnify it once ContraVest's underlying Axis policies were exhausted. On August 12, 2013, Mt. Hawley received notice that the settlement of the Courtney Landing action exhausted the Axis 2005 policy and impaired the 2006 policy by $908,334. ECF No. 195-2. An email about the settlement that was sent on the same day and produced by Mt. Hawley states "[n]o money from Mt. Hawley, but I suspect that it is on the front line for any upcoming Contravest claims since it looks like Zurich and Axxes [sic] are exhausted." ECF No. 113-2 at 2.

On September 16, 2011, plaintiff Plantation Point Horizontal Property Regime Owners Association, Inc. (the "Owners Association") filed suit against ContraVest and

others alleging that the Plantation Point property was defectively constructed (the "underlying action"). ContraVest provided notice of the underlying action to Mt Hawley. In response, Mt. Hawley issued a letter on February 7, 2012, in which it stated that it had "no present obligation" under the Excess Policies and that it would monitor the matter under a complete reservation of rights. ECF No. 75-4.

On August 26, 2013, M. Dawes Cooke, Jr. and Barbara J. Wagner, both attorneys for ContraVest, sent a memorandum to ContraVest's insurers to update them on the progress of the underlying action. ECF No. 30-3. The memorandum contains a chart showing ContraVest's various insurance policies, and the chart reflects that the 05–06 Axis policy was exhausted and includes the statement "Mt. Hawley excess." Id. at 3. The chart also reflects that the 06–07 Axis policy was eroded and again includes the statement "Mt. Hawley excess." Id. Between this memorandum and the August 12, 2013 email about the Courtney Landing action settlement, plaintiffs argue that Mt. Hawley knew that one Axis policy was exhausted and another was eroded.

On December 20, 2013, Michael Prough, Mt. Hawley's coverage counsel, sent Catherine Bolger, counsel for ContraVest, a reservation of rights letter. In it, he explained that Mt. Hawley took the position that it had no present obligation to ContraVest because ContraVest had "substantial primary insurance in effect that is and remains unexhausted, including (but certainly not limited to) the primary insurance with [Axis] underlying Mt. Hawley's policy years." ECF No. 75-5 at 5. The letter also addresses various portions of the Excess Policies that Mt. Hawley could use as a basis to decline or limit coverage.

3

On February 24, 2014, ContraVest's attorneys sent another memorandum to ContraVest's insurers about the underlying action. ECF No. 30-4. In that memorandum, the attorneys noted that the plaintiffs in the underlying action claimed $30 million in repairs, ContraVest estimated $1.5 million in repairs, and that a jury would likely find somewhere in between these two estimates but "probably closer" to the $30 million estimate. Id. at 3.

On March 10, 2014, Ms. Bolger sent a letter to ContraVest's carriers to inform them that a second mediation in the underlying action failed but that the parties were able to identify a realistic settlement range. ECF No. 195-5 at 2–3. Ms. Bolger explained that if ContraVest did not settle, then ContraVest could be the only defendant left at trial in the underlying action with exposure to a $30 million judgment. Id. at 3. Ms. Bolger stated that "Contravest paid for insurance and excess/umbrella insurance for all of these years and should not be put into a position where it is exposed to such a judgment." Id. She continued by informing the carriers that "[t]o not settle the case under these circumstances would be in bad faith and we will not hesitate to file an action if the case is not resolved prior to trial." Id. She concluded the letter by suggesting a coverage mediation as soon as possible.

On May 1, 2014, Mr. Prough sent Ms. Bolger a letter with additional information on Mt. Hawley's coverage position. First, Mr. Prough noted that Axis denied coverage under its 2003–04 and 2004–05 policies due to a residential occupancy exclusion. ECF No. 75-5 at 1. Mr. Prough noted that the Excess Policies follow form to the Axis policies regarding the exclusion, and that the fact that Axis extended no coverage under those two policies means that the 03–04 Policy and the 04–05 Policy could not be implicated. As

4

such, Mt. Hawley's understanding of ContraVest's tender was that it was only seeking coverage under the 05–06 Policy and the 06–07 Policy. Mr. Prough then provided Mt. Hawley's position as to those two policies and Mt. Hawley continued to reserve its rights.

Mr. Prough sent Ms. Bolger another letter on May 2, 2014 expressing concern over ContraVest's settlement negotiations. ECF No. 195-8. He stated that Mt. Hawley was "concerned by the potential that schemes or discussions may be under consideration by Contravest and certain of its insurers, working with [the underlying action] plaintiffs [sic] lawyers, to hope to 'set up' claims against one or more of its other insurers." Id. at 2. He explained further: "In particular, it may occur to some primary insurers and Contravest to seek to pass off their obligations for the alleged loss to excess carriers by helping plaintiffs set up a position against those policies." Id. Mr. Prough explained that

> Mt. Hawley will not hesitate to join all insurers and insureds into any action attempting to enforce any manufactured claim against its excess policies, whether via declaratory judgment, equity, breach of contract, indemnification, contribution or any other available legal theory or remedy. Exhaustion of all primary coverage cannot be manufactured and Mt. Hawley will insist that any party attempting this be accountable for its full limits or for all uninsured or self-insured periods or sums.

Id. He concluded by stating that Mt. Hawley was "sending this letter only to Contravest, not its other insurers, to use the information as it best sees fit" and that Mt. Hawley "would strongly request that any resolution or settlement Contravest and its primary insurers may contemplate truly reflect the full and final resolution of the action. Anything less will be neither full nor final for any party." Id.

On May 4, 2014, the attorney for the plaintiffs in the underlying action sent Ms. Bolger a letter with their settlement demand of $4.5 million and urged her to demand that ContraVest's insurance carriers settle the underlying action. ECF No. 193-6. The next day, May 5, Ms. Bolger forwarded the letter to Mr. Prough and Andrew Epting, another

5

Mt. Hawley attorney, seeking $1.2 million as Mt. Hawley's portion of the settlement and stated that "[i]f you fail to respond timely, the insured plans to do whatever is reasonably necessary to protect itself from a potential $30,000,000 judgment. This may include, but is not limited to, some sort of a Confession of Judgment or promissory note along with an assignment of all policy rights and bad faith claims against Mt. Hawley." ECF No. 193-7. ContraVest gave a deadline of 3:00 p.m. on the same day, May 5, by which it needed a response from Mt. Hawley. Mr. Prough responded to Ms. Bolger's letter on the same day stating that Mt. Hawley's positions remain the same, and that there were reports that ContraVest announced that it reached a settlement in the underlying action, making ContraVest's 3:00 pm deadline moot. ECF No. 193-8.

On or about June 5, 2014, a settlement agreement was executed for the underlying action. ECF No. 1-3 ("the settlement agreement"). The entities and individuals that were both party to the settlement agreement and named insureds on some or all of the Excess Policies include Center Contract of Central Florida, LLC d/b/a ContraVest builders, Gerald Ogier, Mark Ogier, John Schaffer, ContraVest Construction Company, and ContraVest Inc. Id. at 1. Mt. Hawley was not a party to the settlement agreement and did not consent to it. See id. at 4 (identifying Mt. Hawley as a "non-participating insurer"). In the settlement agreement, certain insurance carriers ("participating insurers") agreed to pay the Owners Association $3.3 million. Id. at 5. In return, the plaintiffs in the underlying action, the defendants in the underlying action, and the participating insurers agreed to a mutual release. Id. at 8. ContraVest separately confessed to a judgment of $ 9 million ("Confession of Judgment") and assigned any and all of its rights against Mt. Hawley to the Owners Association and the other plaintiffs in the underlying action. Id. at

6

6.  Moreover, ContraVest released the participating insurers from any and all claims relating to or arising from the Plantation Point property.  Id. at 9.  A final order approving the settlement was entered in the underlying action on June 5, 2014.  ECF No. 1-5.

The Confession of Judgment was made by ContraVest, Inc., ContraVest Construction Company, Ashley Plantation Limited Partnership, and Ashley Plantation Development Corporation.  ECF No. 1-4.  It was signed on May 5, 2014.  Id. at 4.  Interestingly, all four companies had been dissolved before the Confession of Judgment was signed.  John Schaffer ("Schaffer"), the corporate representative for ContraVest, testified at his deposition that ContraVest, Inc. was dissolved on January 5, 2011.  ECF No. 193-10, Schaffer Depo. 24:20–25.  ContraVest Construction Company was dissolved on December 31, 2007.  Schaffer Depo. 21:14–22:12.  Ashley Plantation Limited Partnership was dissolved in 1998, and Ashley Plantation Development Corporation was dissolved in 1999.  Schaffer Depo. 33:5–23.  That means that the only two entities who are Mt. Hawley insureds, ContraVest, Inc. and ContraVest Construction Company, and who are exposed under the Confession of Judgment are dissolved.

Plaintiffs filed this action in state court on December 23, 2014, and Mt. Hawley removed the action on January 22, 2015.  Plaintiffs bring the following causes of action: (1) a declaratory judgment that declares that Mt. Hawley owed ContraVest a duty to defend, settle, and indemnify in the underlying action; (2) bad faith; (3) breach of contract for failing to investigate claims in the underlying action, failing to defend the underlying action, and failing to indemnify ContraVest; and (4) unjust enrichment.  On February 25, 2020, the court issued an order granting summary judgment in favor of Mt. Hawley on all of plaintiffs' claims except their bad faith claim.  ECF No. 212.  Mt.

Hawley filed its second motion for summary judgment on the bad faith claim on March 13, 2020. ECF No. 214. Plaintiffs responded on April 10, 2020, ECF No. 217, and Mt. Hawley replied on April 24, 2020, ECF No. 220. The court held a hearing on the motion on June 23, 2020, during which the court instructed the parties to submit supplemental briefing on an issue of damages discussed further below. Plaintiffs submitted their brief on July 6, 2020, ECF No. 226, and Mt. Hawley submitted its response on July 13, 2020, ECF No. 227. The motion is now ripe for review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

8

### III.   DISCUSSION

Mt. Hawley seeks summary judgment on plaintiffs' bad faith claim, the sole claim remaining in this case, on two grounds.  Mt. Hawley argues that plaintiffs cannot prove that Mt. Hawley breached any extra-contractual duty to plaintiffs and that ContraVest has suffered no consequential damages as a result of any alleged bad faith by Mt. Hawley. The court addresses Mt. Hawley's second argument first, finding that there is no genuine dispute of material fact on the issue of whether ContraVest suffered damage and that summary judgment in favor of Mt. Hawley is warranted.  For this reason, the court declines to address Mt. Hawley's first argument.

Mt. Hawley argues that ContraVest has failed to show that it has suffered from consequential damages of Mt. Hawley's alleged breach of its duties of good faith and fair dealing.  The Supreme Court of South Carolina has recognized an insured's ability to "recover consequential damages in a tort action" if he "can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract."  Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616, 619 (S.C. 1983).  This is true even in the absence of an express contractual breach.  Tadlock Painting Co. v. Maryland Cas. Co., 473 S.E.2d 52, 55 (S.C. 1996).  For example, in Tadlock, the insured brought a bad faith action against its insurer and claimed consequential damages of lost future business.  Id. at 618.  The insured, Tadlock, was painting at a client's job site when wind carried spray paint onto the client's employees' cars.  When Tadlock notified its insurer of its client's claims, a dispute arose over the deductible and delayed resolution of the issue, including the cleaning of the client's employees' cars.  Tadlock eventually personally settled the claims for an amount less

than its deductible and brought a bad faith claim against its insurer, claiming damages because its client would no longer do business with the insured due to the delay in cleaning its employees' cars.  The Supreme Court of South Carolina held that the law permitted Tadlock to recover those damages as consequential damages arising from the insurer's bad faith.  Id. at 619.

Mt. Hawley explains that plaintiffs have not claimed or provided evidence of any consequential damages from Mt. Hawley's alleged bad faith and that the only damages sought have been payment of the Confession of Judgment, which the court already determined Mt. Hawley had no duty to pay.  Plaintiffs did not respond to this argument in any meaningful way in their response brief.  Instead, they just reiterate that an insured can bring a bad faith action absent a breach of an express contractual provision and argue that because the court found a prima facie showing of bad faith when considering a motion to compel, summary judgment would be premature.  Plaintiffs cite to no evidence nor do they even try to explain their theory of damages.  At the hearing on the motion, plaintiffs argued that ContraVest has been damaged by the existence of the Confession of Judgment, despite the fact that ContraVest had long been dissolved at the time the Confession of Judgment was entered.  In other words, they argue that as a consequence of Mt. Hawley's alleged bad faith in handling ContraVest's claim, ContraVest now has an unpaid judgment recorded against it, which has damaged ContraVest.  The court requested that plaintiffs submit authority supporting this proposition, i.e., that the existence of a judgment constitutes consequential damages in a bad faith action, and allowed Mt. Hawley the opportunity to respond.

In plaintiffs' supplemental brief, they argue that: (1) the court has "misapprehended" South Carolina law by holding that South Carolina is a "payment rule" state instead of a "judgment rule" state; (2) unexhausted insurance policies are assets of dissolved corporations; (3) dissolution has no effect on a corporation's ability to sue, be sued, or to be subject to judgment; (4) consent judgments are valid and enforceable; and (5) discovery should proceed so that the reasonableness of Mt. Hawley's conduct can be evaluated. See generally ECF No. 226. In response, Mt. Hawley contends that none of these arguments are responsive to the court's request and that they don't create an issue of fact, meaning summary judgment is warranted.

The court agrees with Mt. Hawley. The court was initially wary of plaintiffs' claim of consequential damages, as it is difficult to imagine how ContraVest, a dissolved corporation, could be damaged by an outstanding judgment. Nevertheless, the court gave plaintiffs the benefit of the doubt and specifically instructed plaintiffs to submit supplemental briefing on the legal issue of whether the existence of a judgment could serve as consequential damages in an insurance bad faith action. Instead of doing so, plaintiffs made unrelated arguments, rehashed its prior arguments, and appeared to seek reconsideration of the court's prior rulings. The only arguments presented by plaintiffs that have any tangential relationship to the issue upon which the court requested briefing are that unexhausted insurance policies are assets of dissolved corporations and that a dissolved company can still be subject to judgment. However, even assuming that both of those are arguments are true, they simply stand for the fact that ContraVest, as a dissolved corporation, is still liable for the Confession of Judgment. The court already held that Mt. Hawley has no duty to pay the Confession of Judgment, making these

11

arguments irrelevant.  None of the arguments presented by plaintiffs stand for the

proposition that the existence of a judgment constitutes consequential damages in a bad

faith action.

Moreover, even if the existence of a judgment could serve as consequential

damages, plaintiffs failed to factually articulate how the existence of such a judgment has

damaged them.  In fact, the evidence before the court indicates just the opposite.  M.

Dawes Cooke, Jr., ContraVest's attorney in the underlying action, stated that ContraVest

had no obligation to pay anything as part of the settlement, that the Confession of

Judgment did not cost ContraVest "anything," and that ContraVest was "satisfied" with

the settlement.  ECF No. 214-3, Cooke Depo. 27:25–28:8; 30:16–31:6; 33:22–23.

Moreover, ContraVest's representative John Schaffer stated in his deposition that he had

"forgotten all about" the Confession of Judgment until either that day or the night before

his deposition.  ECF No. 195-9, Shaffer Depo. 89:13–20.  He explained that he "would

love to get that expunged from our record" but did not indicate how the judgment has

impacted ContraVest in any way.  Id. 89:17–20.

Finally, the court notes that plaintiffs argue that discovery should proceed in this

case, making summary judgment inappropriate at this time.  The most recent scheduling

order in this case was entered on April 6, 2016 and set the deadline for discovery as

March 31, 2017.  ECF No. 81.  That deadline has not been formally extended, but given

the procedural complexity of this case, discovery has been ongoing.  However, the

ongoing nature of discovery does not convince the court that summary judgment is

premature.  Plaintiffs only argue that discovery should proceed so that the reasonableness

of Mt. Hawley's conduct can be evaluated.  ECF No. 226 at 9.  Plaintiffs make no

argument as to why additional discovery of damages is needed.  Therefore, summary judgment on plaintiffs' bad faith claim in favor of Mt. Hawley is warranted.

### IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Mt. Hawley's motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 27, 2020**
**Charleston, South Carolina**

13